Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/16/2023 09:05 AM CDT

State of Nebraska, appellee, v. Rodny
Aldana Cardenas, appellant.

___ N.W.2d ___

Filed June 16, 2023.    No. S-23-096.

1. **Moot Question: Jurisdiction: Appeal and Error.** Because mootness is a justiciability doctrine that operates to prevent courts from exercising jurisdiction, an appellate court reviews mootness determinations under the same standard of review as other jurisdictional questions.
2. **Judgments: Jurisdiction: Appeal and Error.** A jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of law, which requires the appellate court to reach a conclusion independent of the lower court's decision.
3. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law which an appellate court reviews independently of the lower court.
4. **Criminal Law: Courts: Juvenile Courts: Jurisdiction: Appeal and Error.** A trial court's denial of a motion to transfer a pending criminal proceeding to the juvenile court is reviewed for an abuse of discretion.
5. **Judgments: Words and Phrases.** An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.
6. **Juvenile Courts: Jurisdiction.** Whether the juvenile court has jurisdiction over a person is determined not by the person's age at the time of the offense, but, rather, by the person's age at the time he or she is charged for the offense.
7. ____: ____. The determination of whether an individual is a "juvenile" within the provisions of Neb. Rev. Stat. § 43-247 (Reissue 2016) should be based on the individual's age on the date when that individual was charged with an offense. If an individual is a "juvenile" on the date he or she is charged with an offense, the juvenile court may exercise jurisdiction over that individual under the relevant subsection and

may continue to exercise jurisdiction under § 43-247(12) until the individual reaches the age of majority.

8. **Courts: Juvenile Courts: Jurisdiction.** If otherwise appropriate, a case involving an individual who was a juvenile when charged in county court or district court may be transferred to the juvenile court until that individual reaches the age of majority.

9. \_\_\_\_: \_\_\_\_: \_\_\_\_. Under Neb. Rev. Stat. § 29-1816(3)(a) (Cum. Supp. 2022), in the absence of a sound basis for retention in county court or district court, transfer to juvenile court is the general rule.

10. **Courts: Juvenile Courts: Jurisdiction: Proof.** In a motion to transfer to juvenile court, the burden of proving a sound basis for retaining jurisdiction in county court or district court lies with the State.

11. **Courts: Juvenile Courts: Judgments.** When ruling on a motion to transfer to juvenile court under Neb. Rev. Stat. § 29-1816(3) (Cum. Supp. 2022), the court is required to set forth findings supporting its decision.

12. **Courts: Juvenile Courts: Jurisdiction.** In order to retain proceedings in criminal court, the court need not resolve every statutory factor against the juvenile, and there are no weighted factors and no prescribed method by which more or less weight is assigned to a specific factor. It is a balancing test by which public protection and societal security are weighed against the practical and nonproblematical rehabilitation of the juvenile.

13. **Courts: Juvenile Courts: Evidence.** Under Neb. Rev. Stat. § 29-1816(3) (Cum. Supp. 2022), after the court considers the evidence in light of the Neb. Rev. Stat. § 43-276 (Cum. Supp. 2022) factors, the case shall be transferred to juvenile court unless a sound basis exists for retaining the case in county court or district court.

14. **Courts: Juvenile Courts: Jurisdiction: Evidence.** When a district court's basis for retaining jurisdiction over a juvenile is supported by appropriate evidence, it cannot be said that the court abused its discretion in refusing to transfer the case to juvenile court.

Appeal from the District Court for Hall County: Patrick M. Lee, Judge. Affirmed.

Mark Porto, of Wolf, McDermott, Depue, Sabott, Butz & Porto, L.L.C., for appellant.

Michael T. Hilgers, Attorney General, and Matthew Lewis for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Miller-Lerman, J.

## NATURE OF CASE

Rodny Aldana Cardenas (Aldana) appeals the order of the district court for Hall County that overruled his motion to transfer his case to juvenile court. Aldana claims the district court abused its discretion when it denied transfer. The State argues, in part, that when Aldana turned 18 years old during the pendency of this appeal, the issue of transferring the case to juvenile court became moot. We determine that the issue did not become moot, and we conclude that the district court did not abuse its discretion when it denied the transfer. We therefore affirm the order of the district court.

## STATEMENT OF FACTS

On December 5, 2022, the State filed an information in the district court charging Aldana, who was born in March 2005, with first degree sexual assault, a Class II felony under Neb. Rev. Stat. § 28-319 (Reissue 2016). The court accepted Aldana's plea of not guilty.

On January 3, 2023, Aldana filed a motion pursuant to Neb. Rev. Stat. § 29-1816(3) (Cum. Supp. 2022) in which he requested that the district court transfer this case to juvenile court. Aldana asserted that he was under the age of 18 on the date of the alleged offense—September 14, 2022—and that there was no sound basis to retain the matter in the district court.

At a hearing on the motion to transfer, the State presented evidence to support its position that the case should be retained in the district court. The State's evidence included investigative reports related to the charged offense, as well as testimony by a law enforcement officer who investigated the incident and testimony by a juvenile probation supervisor. Aldana presented evidence to counter the State's position and to support transfer to juvenile court. Aldana's evidence

included testimony by his mother, as well as an email from a licensed psychologist regarding treatment of juvenile sex offenders and a study regarding recidivism rates of juvenile sex offenders and the effect of treatment on such juveniles.

Evidence presented at the hearing indicated that Aldana had been living with his grandmother in Cuba and that he had immigrated to Nebraska in August 2022 to live with his parents, who had been living in the United States for several years. Aldana began high school soon after he arrived in Nebraska. The incident that gave rise to the charge against Aldana occurred in September 2022, just over a month after he had arrived. The investigation by law enforcement indicated that Aldana and several other students had gone to a lake over their lunch period. The complaining witness alleged that she and Aldana had gone to a vehicle to "make out" and that at some point during the encounter, she decided that she did not want to proceed any further. She alleged that she informed Aldana of her desire for him to stop, but the encounter continued and included penetration.

The parties also presented evidence regarding potential treatment that could be offered in a juvenile case. Such evidence was mostly couched in terms of generalities in the absence of an assessment to determine specific treatment tailored to Aldana. Aldana offered into evidence an email from a representative of a juvenile treatment program, who described alternative services "for juveniles who have sexually offended." The representative stated, with the proviso that "we would need to assess whether there would be sufficient time to complete the goals" for a specific individual, that "[i]n general . . . we think one year would be a realistic time frame" and that the program does "attempt to individualize a youth's plan of care to accommodate his needs and other external factors, e.g., aging out of the system."

The juvenile probation supervisor called by the State testified, inter alia, that "[a] typical term of probation that is recommended for a felony offense is around 18 months to

ensure there's enough time for probation to work with a youth on treatment recommendations and any other skill building to rehabilitate them." The supervisor testified that a juvenile offender may be recommended to complete a "residential treatment facility program [that] can be anywhere from 6 to 12 months," but the supervisor further testified that once the juvenile has completed such a treatment program, "[t]here's typically on-going aftercare recommendations that would include outpatient therapy when going from inpatient to the community, and there would also be supervision within probation." The supervisor acknowledged that juvenile probation is "no longer able to supervise [individuals] past their 19th birthday" and further testified that "[t]he biggest barrier working with 18 year olds coming into the system at that age is the small window of time working with them" and that "sometimes treatment recommendations can be lengthy."

After the hearing, on February 2, 2023, the district court filed an order in which it found that the State had met its burden to show that a sound basis existed for retaining jurisdiction of this matter in the district court. The court therefore overruled Aldana's motion to transfer the case to the juvenile court. The court's findings and reasoning are set forth in more detail in our analysis below.

Aldana appeals the district court's order that overruled his motion to transfer to juvenile court.

## ASSIGNMENT OF ERROR

Aldana claims that the district court abused its discretion when it overruled his motion to transfer his case to the juvenile court.

## STANDARDS OF REVIEW

[1,2] Because mootness is a justiciability doctrine that operates to prevent courts from exercising jurisdiction, we review mootness determinations under the same standard of review as other jurisdictional questions. *State v. Roberts*, 304 Neb. 395, 934 N.W.2d 845 (2019). A jurisdictional question

that does not involve a factual dispute is determined by an appellate court as a matter of law, which requires the appellate court to reach a conclusion independent of the lower court's decision. *Id*.

[3] Statutory interpretation presents a question of law which an appellate court reviews independently of the lower court. *State v. Williams*, 313 Neb. 981, 987 N.W.2d 613 (2023).

[4,5] A trial court's denial of a motion to transfer a pending criminal proceeding to the juvenile court is reviewed for an abuse of discretion. *State v. Hunt*, 299 Neb. 573, 909 N.W.2d 363 (2018). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id*.

## ANALYSIS

*Issue of Transfer to Juvenile Court Did Not Become*
*Moot When Aldana Turned 18 Years Old*
*During the Pendency of This Appeal.*

The State contends that the issue of transferring this case to juvenile court became moot when Aldana turned 18 years old during the pendency of this appeal. The notice of appeal in this case was filed on February 7, 2023, and Aldana turned 18 years old in March. He will turn 19 years old in March 2024. The State contends that the juvenile court cannot acquire jurisdiction of Aldana's case because he is no longer a juvenile and that therefore, his case can no longer be transferred to the juvenile court. As explained below, we reject the State's contention.

The State cites our decision in *State v. Pauly*, 311 Neb. 418, 972 N.W.2d 907 (2022), which the State characterizes as holding that whether the juvenile court has jurisdiction over a particular person is determined not by the person's age at the time of the offense, but, rather, by his or her age at the time the juvenile court is expected to acquire jurisdiction. We do not agree with this characterization. The State

argues that now that Aldana is 18 years old, he has "aged out of the period when the juvenile court could acquire jurisdiction over him" and that because the juvenile court could no longer acquire jurisdiction over Aldana, any question regarding transfer of his case to the juvenile court is now moot. Brief for appellee at 15.

The State cites Neb. Rev. Stat. § 43-247 (Reissue 2016), which sets forth juvenile court jurisdiction, and § 43-247(2) in particular, which provides that the juvenile court has jurisdiction of "[a]ny juvenile who has committed an act which would constitute a felony under the laws of this state and who, beginning July 1, 2017, was eleven years of age or older at the time the act was committed." The State also cites Neb. Rev. Stat. § 43-245 (Cum. Supp. 2022), which provides definitions for purposes of the Nebraska Juvenile Code, and in particular § 43-245(11), which defines "juvenile" as "any person under the age of eighteen." The State argues that reading §§ 43-247(2) and 43-245(11) together, the juvenile court can only acquire jurisdiction of a person under § 43-247(2) when the person is a "juvenile," that is, only at a time when the person is under the age of 18. The State asserts that once the person turns 18 years of age, the juvenile court can no longer acquire jurisdiction of that person and a case brought against that person in another court cannot be transferred to juvenile court.

[6] Contrary to the State's characterization of our holding in *State v. Pauly*, in that case we stated that "whether the juvenile court has jurisdiction over a person is determined not by the person's age at the time of the offense, but, rather, by the person's age *at the time he or she is charged for the offense*." 311 Neb. at 430, 972 N.W.2d at 918 (emphasis supplied). This language indicates that the relevant date for determining a person's age, and therefore whether that person is a "juvenile" for purposes of juvenile court jurisdiction, is when the person is originally charged for an offense, whether that person is charged by complaint in the county court, by

information in the district court, or by petition in the juvenile court.

Key to our decision in *State v. Pauly* was § 43-247(12), which provides in relevant part that the juvenile court has jurisdiction of "any individual adjudged to be within the provisions of this section until the individual reaches the age of majority or the court otherwise discharges the individual from its jurisdiction." Section 43-245(2) defines "[a]ge of majority" as "nineteen years of age" for purposes of the Nebraska Juvenile Code. Therefore, the juvenile court has jurisdiction of "any individual adjudged to be within the provisions" of § 43-247 until that person turns 19 years of age. The defendant in *State v. Pauly* was under 18 years old when the charged offenses were alleged to have been committed, but he was 21 years old on the date he was charged. Therefore, by the time he was charged, he had reached the age of majority and the juvenile court could no longer exercise jurisdiction over him under § 43-247(12). In *State v. Pauly*, we relied in part on *State v. Parks*, 282 Neb. 454, 803 N.W.2d 761 (2011), in which the defendant was 24 years old at the time he was charged with offenses that were alleged to have occurred when he was 14 or 15 years old. In *State v. Parks*, we held that because under the juvenile code a juvenile is discharged from juvenile court jurisdiction when the juvenile reaches majority at "nineteen years of age," the juvenile court's jurisdiction ended when the juvenile reached the age of majority, and the district court was not required to consider a motion to transfer the case to juvenile court.

Unlike the present case, in *State v. Pauly*, it was not necessary to determine whether a person who was charged with an offense at age 17 could be transferred to the juvenile court after the person turned 18 years old but had not yet reached age 19. In the present case, under § 43-247(12), if Aldana is "adjudged to be within the provisions" of § 43-247, the juvenile court would have jurisdiction over Aldana until he turns 19 years old in March 2024. Under the facts of Aldana's

case, the relevant provision of § 43-247 is subsection (2), which requires that the individual is a "juvenile" in order to be under juvenile court jurisdiction. Therefore, the relevant question of statutory interpretation in this case is the date at which, under § 43-247(12), an individual is to be "adjudged to be within the provisions of this section."

This court does not appear to have addressed circumstances where a defendant is charged when under the age of 18 and later turns 18 years old but has not yet reached the age of majority—age 19—by the time a transfer to juvenile court is requested or completed. The Nebraska Court of Appeals addressed similar circumstances in *State v. Burris*, 30 Neb. App. 109, 965 N.W.2d 828 (2021), but the State argues that the holding in that case is inconsistent with our holding in *State v. Pauly*, 311 Neb. 418, 972 N.W.2d 907 (2022). In *State v. Burris*, the defendant was charged with an offense that was alleged to have occurred when he was 17 years old. The Court of Appeals rejected the State's argument to the effect that the defendant's case could not be transferred to the juvenile court because he had turned 18 years old before he moved for transfer. The Court of Appeals reasoned that under § 43-247(12), the juvenile court had continuing jurisdiction until the defendant turned 19 years old and that the relevant date for the juvenile court to acquire jurisdiction was the date the alleged offense was committed. The Court of Appeals relied in part on § 29-1816(2), which provides that when a defendant is arraigned in county court or district court, the court "shall advise the accused, if the accused was younger than eighteen years of age *at the time the alleged offense was committed*, that the accused may move the . . . court . . . to waive jurisdiction in such case to the juvenile court for further proceedings." (Emphasis supplied.)

The State argues that the statement in *State v. Burris* to the effect that juvenile court jurisdiction depends on the date of the offense conflicts with *State v. Pauly*, in which we specifically stated that whether the juvenile court has

jurisdiction over a person is not determined by the person's age at the time of the offense. We agree with the State that *State v. Burris* is inconsistent with *State v. Pauly*, in which we held that "whether the juvenile court has jurisdiction over a person is determined not by the person's age at the time of the offense, but, rather, by the person's age at the time he or she is charged for the offense." 311 Neb. at 430, 972 N.W.2d at 918. Therefore, we disapprove *State v. Burris* to the extent it determined that under § 43-247(12) an individual is to be adjudged to be within the provisions of § 43-247 based on the date on which the offense is alleged to have occurred rather than the date on which the individual is charged with the offense.

[7,8] The determinative fact in *State v. Pauly* was that the defendant had turned 19 years old before he was charged and that therefore, the juvenile court no longer had jurisdiction under § 43-247(12). Notwithstanding different facts, we determine that our statement in *State v. Pauly* to the effect that whether the juvenile court has jurisdiction over a person is determined by the person's age at the time the person is charged for an offense applies to the circumstances of this case, and the determination of when an individual is "adjudged to be within the provisions of" § 43-247—and therefore within the scope of jurisdiction of juvenile court—is determined on the date the person is charged with the offense. In summary, under the relevant statutes, we understand the determination of whether the individual is a "juvenile" within the provisions of subsection (2) and other relevant subsections of § 43-247 should be based on the individual's age on the date when that individual was charged with an offense. If an individual is a "juvenile" on the date he or she is charged with an offense, the juvenile court may exercise jurisdiction over that individual under the relevant subsection and may continue to exercise jurisdiction under § 43-247(12) until the individual reaches the age of majority. Furthermore, if otherwise appropriate, a case involving an individual who was a

juvenile when charged in county court or district court may be transferred to the juvenile court until that individual reaches the age of majority.

Although the statutes are not explicit on this point, our understanding is consistent with relevant statutes. See *State v. Yzeta*, 313 Neb. 202, 983 N.W.2d 124 (2023) (components of series or collection of statutes pertaining to certain subject matter may be conjunctively considered and construed to determine intent of Legislature so that different provisions of act are consistent, harmonious, and sensible).

Neb. Rev. Stat. § 43-246.01(3) (Reissue 2016) provides that the juvenile court has concurrent original jurisdiction with the county court or district court as to "[a]ny juvenile described in subdivision (1)(a)(ii) of section 29-1816." Section 29-1816(1)(a)(ii) describes an "accused [who] was younger than eighteen years of age and was fourteen years of age or older when an alleged offense punishable as a Class I, IA, IB, IC, ID, II, or IIA felony was committed." Neb. Rev. Stat. § 43-276(1) (Cum. Supp. 2022) sets forth factors that a county attorney or city attorney must consider when "making the determination whether to file a criminal charge" in county court or district court or to "file a juvenile court petition." As will be discussed further in our analysis of the district court's transfer decision in this case, the county court or district court must consider the same factors when ruling on a motion under § 29-1816(3) to transfer a case.

We further note that under § 29-1816(3)(b), when a case is transferred from the county court or district court to the juvenile court, "the complete file in the county court or district court shall be transferred to the juvenile court and the complaint, indictment, or information may be used in place of a petition therein." The provisions of § 29-1816 regarding transfer to juvenile court contemplate a court's reviewing the prosecutor's decision whether to file the charges in a county court or district court or to file a petition in juvenile court, and therefore, the date the prosecutor charges the

individual is relevant to that determination. Because under § 43-246.01(3), the juvenile court has "[c]oncurrent original jurisdiction" with a county court or district court in these circumstances, and because the complaint or information filed in the county court or district court is used as the petition when a case is transferred to the juvenile court, we find it sensible that the relevant date to determine whether an individual is subject to juvenile court jurisdiction when that individual's case is transferred to the juvenile court is the date that the individual was charged with an offense by complaint or by information and the jurisdiction of the county court or district court was invoked. The court deciding a transfer motion is effectively reviewing the prosecutor's decision, and therefore, such review should be based on circumstances as they existed when the prosecutor filed the charge.

We further note that § 29-1816 anticipates the possibility that a person charged when a juvenile could turn 18 years old while a transfer decision is being made and that the juvenile court could lose jurisdiction within a year thereafter when the individual reaches the age of majority. Section 29-1816 provides strict deadlines designed to expedite consideration and completion of any transfer from county court or district court to juvenile court: under § 29-1816(2), the accused must move for transfer to juvenile court "not later than thirty days after arraignment"; under § 29-1816(3)(a), the county court or district court must schedule a hearing on the transfer motion within 15 days; under § 29-1816(3)(b), the county court or district court must make its decision on the motion within 30 days after the hearing; under § 29-1816(3)(c), a party may appeal the decision within 10 days and review must be advanced on the appellate court docket; and § 29-1816(3)(c) further requires the appellate court to "conduct its review in an expedited manner and . . . render the judgment and opinion, if any, as speedily as possible." Section 29-1816 requires an expedited decision and appeal to facilitate transfer while

the individual is still under the age of majority and remains within juvenile court jurisdiction.

We conclude that the relevant date for determining whether Aldana was a "juvenile" subject to juvenile court jurisdiction is the date he was charged—December 5, 2022. At that time, Aldana was under age 18 and therefore a "juvenile" over whom the juvenile court could exercise jurisdiction under § 43-247(2). Under § 43-247(12), Aldana remains eligible for transfer to juvenile court until he reaches the age of majority when he turns 19 years old. We therefore reject the State's argument that this case is moot, and we turn to reviewing the district court's order that overruled Aldana's motion to transfer.

*District Court Did Not Abuse Its Discretion When
It Overruled Aldana's Motion to Transfer
His Case to Juvenile Court.*

Aldana claims that the district court abused its discretion when it overruled his motion to transfer his case to juvenile court. We reject this claim.

When a motion is filed to transfer a case from the district court to juvenile court, § 29-1816(3)(a) requires the district court to consider the criteria set forth in § 43-276, and "[a]fter considering all the evidence and reasons presented by both parties, the case shall be transferred to juvenile court unless a sound basis exists for retaining the case in . . . district court."

Under § 43-276, the "district court in making the determination whether to transfer a case" is required to consider:

> (a) The type of treatment such juvenile would most likely be amenable to; (b) whether there is evidence that the alleged offense included violence; (c) the motivation for the commission of the offense; (d) the age of the juvenile and the ages and circumstances of any others involved in the offense; (e) the previous history of the juvenile, including whether he or she had been convicted of any previous offenses or adjudicated in juvenile court;

(f) the best interests of the juvenile; (g) consideration of public safety; (h) consideration of the juvenile's ability to appreciate the nature and seriousness of his or her conduct; (i) whether the best interests of the juvenile and the security of the public may require that the juvenile continue in secure detention or under supervision for a period extending beyond his or her minority and, if so, the available alternatives best suited to this purpose; (j) whether the victim or juvenile agree to participate in restorative justice; (k) whether there is a juvenile pretrial diversion program established pursuant to sections 43-260.02 to 43-260.07; (l) whether the juvenile has been convicted of or has acknowledged unauthorized use or possession of a firearm; (m) whether a juvenile court order has been issued for the juvenile pursuant to section 43-2,106.03; (n) whether the juvenile is a criminal street gang member; and (o) such other matters as the parties deem relevant to aid in the decision.

[9,10] Because § 29-1816(3)(a) provides that "the case shall be transferred to juvenile court unless a sound basis exists for retaining the case," we have stated that in the absence of a sound basis for retention, transfer to juvenile court is the general rule. *State v. Tyler P.*, 299 Neb. 959, 911 N.W.2d 260 (2018). We have also stated that the burden of proving a sound basis for retention lies with the State. *State v. Hunt*, 299 Neb. 573, 909 N.W.2d 363 (2018).

[11] We have further stated that the court is required to set forth findings supporting its decision on the motion to transfer. *Id.* The district court in this case set forth its findings in the order in which it overruled Aldana's motion to transfer to juvenile court. The district court reviewed each of the factors set forth in § 43-276 and stated how each factor did or did not influence its decision.

The district court stated that no evidence had been presented by either party regarding factors (j) (restorative justice), (k) (juvenile pretrial diversion program), or (l) (use

or possession of firearm), and the court therefore found that these factors were not applicable to its determination. The court found with regard to factor (e) (previous history) that the only credible evidence was that Aldana had no prior history of probation in Nebraska, but it noted that the lack of a history in Nebraska was easily explained by the fact that Aldana had arrived in Nebraska from Cuba only about a month prior to the alleged offense; the court therefore determined that this factor was neutral to the question of transfer. The court reviewed evidence regarding the remaining factors and classified each factor as either weighing in favor of retaining jurisdiction in the district court or weighing in favor of transferring to the juvenile court.

The court found that factors (a), (b), (c), (d), (h), and (i) weighed in favor of retaining jurisdiction in the district court. Regarding factor (a), the court found that while Aldana presented evidence regarding the general effectiveness of juvenile treatment programs, there had been no specific identification of what treatment would be necessary for Aldana and it was impossible to ascertain Aldana's specific amenability to treatment. The court noted that the parties agreed to the potential that long-term treatment would be necessary, and it therefore determined that factor (a) weighed in favor of retaining jurisdiction in the district court. Regarding factor (b), the court found that evidence of the investigation into the alleged offense supported an inference that violence was involved in the commission of the offense and that therefore, this factor weighed in favor of retaining jurisdiction. Regarding factor (c), the court found that no evidence had been presented to explain the motivation for the offense and that therefore, it could only infer the motivation was sexual gratification; the court determined this factor weighed in favor of retaining jurisdiction. Regarding factor (d), the court stated that at the time of its ruling, Aldana would turn 18 years old in about a month and 19 years old a year later, and it found that this timeframe would allow only a minimal time period for

Aldana to complete a rehabilitative program on juvenile probation before juvenile court jurisdiction ended when he turned 19 years old; the court determined that because this timeline left no margin for error and because successful completion of a program within that timeframe was speculative, this factor weighed in favor of retaining jurisdiction. Regarding factor (h), the court found that evidence regarding the investigation showed that Aldana was or should have been able to appreciate the nature and seriousness of his alleged conduct; the court therefore determined this factor weighed in favor of retaining jurisdiction. Finally, regarding factor (i), the court found that because Aldana had, at most, just over a year left under juvenile court jurisdiction and because of evidence regarding the duration of sex offender treatment, it was likely that it would be necessary for Aldana to remain on supervision beyond his reaching the age of majority and that therefore, this factor weighed in favor of retaining jurisdiction in the district court.

The court found that factors (f), (g), (m), and (n) weighed in favor of transferring the matter to juvenile court. Regarding factor (f), the court found no evidence regarding Aldana's best interests other than Aldana's own assertions that transfer was in his best interests, and therefore, the court determined that this factor weighed in favor of transferring the case to juvenile court. Regarding factor (g), the court found that no evidence had been shown regarding a risk of public safety beyond the allegations related to the charged offense, and therefore, the court found that this factor weighed in favor of transferring the case to juvenile court. Regarding factor (m), the court found that no evidence had been presented regarding an order pursuant to Neb. Rev. Stat. § 43-2,106.03 (Reissue 2016), which authorizes the juvenile court to enter an order finding that a juvenile was not amenable to juvenile rehabilitative services, and the court therefore determined that this factor weighed in favor of transferring the case to the juvenile court. Finally, regarding factor (n), the court found that no

evidence had been offered by the State to show that Aldana was a criminal street gang member, and the court therefore determined that this factor weighed in favor of transferring the case to the juvenile court.

Having considered all the factors, the court found that the State had met its burden to show that a sound basis existed for retaining jurisdiction of the matter in the district court. The court therefore overruled Aldana's motion to transfer his case to the juvenile court.

Aldana generally claims that the district court abused its discretion when it overruled his motion to transfer, and he makes several arguments regarding specific aspects of the district court's reasoning. Certain arguments focus on the burden of proof and the manner in which the district court considered factors it classified as "neutral" or as weighing in favor of transfer. Other arguments concern factors the district court classified as weighing in favor of retaining jurisdiction.

Regarding the first group, Aldana argues that the district court applied the wrong burden of proof, particularly when it appeared to require him to show that the statutory factors weighed in favor of transfer. In this regard, Aldana also argues that the district court improperly classified some factors as "neutral" rather than as weighing in favor of transfer. Aldana agrees with the district court's assessment that certain factors weighed in favor of transfer, but he argues that because other factors were treated as neutral or not applicable, the importance of these factors to the district court's consideration was diminished.

[12,13] We note first that in the order, the district court found that the State had met its burden to show that a sound basis existed for retaining jurisdiction of the matter in district court, and therefore, it recognized that the burden of proving a sound basis for retention lies with the State. See *State v. Hunt*, 299 Neb. 573, 909 N.W.2d 363 (2018). With regard to the district court's classification of factors as "neutral" or as weighing in favor of either transfer or retention, we note

that we have stated that the proper analysis should focus on whether the State has shown a basis for retaining the case rather than weighing factors that favor retention against factors that favor transfer. We have stated that in order to retain the proceedings, the court need not resolve every statutory factor against the juvenile, and there are no weighted factors and no prescribed method by which more or less weight is assigned to a specific factor. *Id*. It is a balancing test by which public protection and societal security are weighed against the practical and nonproblematical rehabilitation of the juvenile. *Id*. After the court considers the evidence in light of the § 43-276 factors, the case shall be transferred to juvenile court unless a sound basis exists for retaining the case in county court or district court. *State v. Hunt, supra*.

Under this procedure, the court does not mathematically weigh factors that favor transfer against factors that favor retention. The balancing we described above focuses on interests of public protection and societal security and rehabilitation of the juvenile, and it requires a consideration of whether in light of those interests and the statutory factors, the State has shown that a sound basis exists for retaining jurisdiction in the county court or district court. Therefore, the relevant classification or characterization of statutory factors is whether they support a showing of a sound basis for retention or whether they do not. Viewed from that perspective, factors that are considered "neutral" or "not applicable" are equivalent to factors that favor transfer because § 43-276 starts with the presumption that the case should be transferred; the court's determination thereafter is whether other factors provide a sound basis for retention. Although the district court's classification of certain factors as "neutral," "not applicable," or "weigh[ing] in favor of transfer[]" would better be described as factors that do not support a sound basis for retention, the district court's description of those factors does not in itself lead us on appeal to find an abuse of discretion by the district court. Instead, our review on appeal focuses

on whether the statutory factors that the court found to favor retention established a sound basis for doing so.

Aldana's remaining arguments focus on the factors the district court determined to weigh in favor of retention. These arguments focus on factor (c) (motivation), as well as factors (a) (type of treatment to which juvenile would be amenable), (d) (age of juvenile), and (i) (whether necessary period of detention or supervision may extend beyond age of majority).

Regarding factor (c), Aldana concedes the district court's finding that the only inference from the evidence was that the motivation for the alleged offense was sexual gratification. But he argues the court did not give reasons for why this weighed in favor of retaining rather than transferring, and he argues that treatment that may be provided under juvenile court jurisdiction can address issues related to persons who are motivated by sexual gratification. While § 43-276(3) does not further elucidate how "motivation for the commission of the offense" should factor into the transfer decision, in this case, the district court appears to have considered motivation in the sense of whether the individual's actions were motivated by arguably justifiable reasons or by reasons unique to juvenile impulses. The district court appears to have considered sexual gratification as a motivation of a more adult nature that contributed to a sound basis for retaining jurisdiction in a criminal case rather than a juvenile setting. That said, we do not consider this finding in itself to be an abuse of discretion, and instead, as we discuss below, we consider it with other factors the district court found to favor retention in determining whether those factors taken together and balanced provided a sound basis for retention.

With regard to factors (a), (d), and (i), Aldana argues that the district court made its decision based on a lack of evidence regarding what treatment would be most appropriate for him as an individual and that the court cynically assumed he would not be amenable to less intensive or less lengthy treatment options. He argues that there was evidence that

effective treatment could successfully be completed in the period of just over a year after the transfer hearing during which he would continue to be under juvenile court jurisdiction pursuant to § 43-247(12).

Although there was evidence of programs that could be completed in less than a year, there was also some evidence that treatment could take longer based on various factors. In this regard, the juvenile probation supervisor called by the State testified that even when intensive or in-house treatment programs were of a shorter duration, there was often the need for supervision after the completion of the program. Evidence also indicated that, because of the relatively short timeframe remaining for juvenile court jurisdiction, complications existed when an individual came into the juvenile system at or near age 18. We think there was sufficient evidence to support the district court's emphasis on the short timeframe and its concern that because of the timeframe, there would be no room for error in any treatment that might be provided in a juvenile context. There was appropriate evidence to support this concern, and it was not an abuse of discretion to consider these factors as supporting a sound basis to retain jurisdiction.

[14] Moreover, we note that regardless of the district court's findings with respect to the specific factors discussed above, on appeal, we need to review the decision in light of all the factors that the district court found relevant to its decision. When a district court's basis for retaining jurisdiction over a juvenile is supported by appropriate evidence, it cannot be said that the court abused its discretion in refusing to transfer the case to juvenile court. *State v. Hunt*, 299 Neb. 573, 909 N.W.2d 363 (2018). In this respect, we note that Aldana concedes that factors (b) (whether alleged offense included violence) and (h) (ability to appreciate nature and seriousness of conduct), weigh, at least marginally, in favor of retaining his case in the district court. We consider these factors, along with the factors discussed above relating to motivation, amenability to treatment, age of the individual,

and potential for necessity of detention or supervision beyond the age of majority. We determine that each of these factors was supported by evidence and that when considered together, they support the district court's finding that the State had shown a sound basis for retaining jurisdiction in the district court. We cannot say that the district court abused its discretion when it overruled Aldana's motion to transfer his case to juvenile court.

## CONCLUSION

We conclude that the appeal did not become moot when Aldana turned 18 years old during the pendency of this appeal in which Aldana challenged the order of the district court that had overruled his motion to transfer the case to juvenile court. However, we also conclude that the district court did not abuse its discretion when it overruled his motion to transfer the case to juvenile court. We therefore affirm the order of the district court.

Affirmed.