IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE V. SAVIOR H.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

SAVIOR H., APPELLANT.

Filed December 26, 2024.    No. A-24-546.

Appeal from the District Court for Douglas County: TRESSA M. ALIOTH, Judge. Affirmed.

Jessica L. Gilgor, of Battle Born Law, L.L.C., for appellant.

Michael T. Hilgers, Attorney General, and Erin E. Tangeman for appellee.

RIEDMANN, Chief Judge, and PIRTLE and BISHOP, Judges.

RIEDMANN, Chief Judge.

### INTRODUCTION

Savior H. appeals from an order of the Douglas County District Court denying her request to transfer her criminal proceedings to the juvenile court. Finding no abuse of discretion by the district court, we affirm.

### BACKGROUND

Savior was charged by information on May 14, 2024, with being an accessory to a felony in violation of Neb. Rev. Stat. § 28-204(1)(a), (b), or (c) (Reissue 2016), a Class IIA felony. The charge arose out of an incident that occurred on November 14, 2023, at about 4:30 in the afternoon when shots were fired at an Omaha, Nebraska, residence during a drive-by shooting. Savior was alleged to have been in the vehicle at the time.

Savior filed a motion to transfer the matter to the juvenile court on June 21, 2024, and a hearing was held on July 2. No testimony was adduced, but the State offered a disc containing

- 1 -

nearly 300 pages of police reports related to the investigation of the shooting, and the parties entered into a stipulation that Savior was under the jurisdiction of the juvenile court at the time of the incident arising out of a July 26, 2023, charge for unlawful occupancy. Savior had been adjudicated on September 28 and disposition occurred on December 27, prior to the current charge being filed. The State also requested that the district court take judicial notice of the criminal information, which provided a birthdate for Savior in January 2007. The remainder of the proceeding consisted solely of counsels' arguments.

The police reports indicate that law enforcement was called to a residence in Omaha where there had been a call for "shots fired." When officers arrived, they found there had been approximately 25 shots fired at the house as evidenced by the shell casings found. There were seven occupants of the house, one of whom had been injured by shrapnel. Officers determined that the vehicle involved in the incident was a stolen black Toyota Prius, occupied by four juveniles. The vehicle was seen on nearby surveillance cameras driving past the house shortly before the call came in.

Officers located the vehicle in an alley near a grocery store and saw a black rifle on the floorboard of the front passenger seat with several casings located in the rear seat. Savior was apprehended when she exited the store. She, along with her three companions, were all detained. A physical search of the vehicle disclosed nearly 450 live rounds and 25 spent casings. Investigation revealed that the juveniles were all "documented K Family Gang members and or associates" and the target of the shooting, James Gurung, was a member of a rival gang.

Extraction from Savior's cell phone disclosed text messages between her and Tah Moo (another occupant of the vehicle) dated November 11, 2023, in which they discussed disliking Gurung and wanting to kill him. Savior's messages included the comments "I ain't letting ts slide," "Let's fking kill him," "I want yom dead," "fuck this probation shit," "Let's beat on bitches in jail to," "Let's do it odgaf anymore," and "Idc how bad jail is." Their disdain for Gurung arose from a social media post he allegedly made "dissing" Moo's deceased boyfriend. Photographs taken November 11, and extracted from Savior's cell phone, showed Savior holding a rifle nearly identical to the firearm recovered from this incident.

The district court took the matter under advisement and issued an order on July 11, 2024, denying Savior's motion to transfer. In its order, the court set forth the factors contained in Neb. Rev. Stat. § 43-276(1) (Cum Supp. 2022) and iterated the pertinent facts set forth above. It recognized that Savior's only prior charge was for a nonviolent offense, Savior was 16 years old at the time of the current offense, had gang association, and had an ongoing feud with the intended victim. It concluded that in balancing the concerns for public safety against the rehabilitation of Savior, the concern for public safety was too great. It noted evidence to support the charged offense was premeditated and that it involved at least 25 rounds of fire at an occupied house in a residential neighborhood. It therefore denied the motion to transfer. Savior appeals.

## ASSIGNMENTS OF ERROR

Consolidated and restated, Savior assigns the district court (1) abused its discretion in denying her motion to transfer because the court failed to adequately address the requisite statutory factors, "focusing solely, and primarily, on the concerns for public safety" and (2) erred in concluding the State met its burden of proof to justify retaining the case in district court.

## STANDARD OF REVIEW

A trial court's denial of a motion to transfer a pending criminal proceeding to the juvenile court is reviewed for an abuse of discretion. *State v. Aldana Cardenas*, 314 Neb. 544, 990 N.W.2d 915 (2023). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

## ANALYSIS

*Jurisdiction.*

Neb. Rev. Stat. § 43-246.01(3) (Reissue 2016) grants concurrent jurisdiction to the juvenile court and the county or district courts over juvenile offenders who are (1) 11 years of age or older and commit a traffic offense that is not a felony or (2) 14 years of age or older and commit a Class I, IA, IB, IC, ID, II, or IIA felony. Actions against these juveniles may be initiated either in juvenile court or in the county or district court. In the present case, all the allegations against Savior put her within the second category of juvenile offenders. The State elected to file charges against Savior in the district court.

When an alleged offense is one over which both the juvenile court and the criminal court can exercise jurisdiction, a party can move to transfer the matter. For matters initiated in criminal court, a party can move to transfer it to juvenile court pursuant to Neb. Rev. Stat. § 29-1816(3) (Reissue 2016).

When Savior moved to transfer her case to juvenile court, the district court conducted a hearing pursuant to § 29-1816(3)(a), which subsection requires consideration of the following factors set forth in § 43-276:

> (a) The type of treatment such juvenile would most likely be amenable to; (b) whether there is evidence that the alleged offense included violence; (c) the motivation for the commission of the offense; (d) the age of the juvenile and the ages and circumstances of any others involved in the offense; (e) the previous history of the juvenile, including whether he or she had been convicted of any previous offenses or adjudicated in juvenile court; (f) the best interests of the juvenile; (g) consideration of public safety; (h) consideration of the juvenile's ability to appreciate the nature and seriousness of his or her conduct; (i) whether the best interests of the juvenile and the security of the public may require that the juvenile continue in secure detention or under supervision for a period extending beyond his or her minority and, if so, the available alternatives best suited to this purpose; (j) whether the victim or juvenile agree to participate in restorative justice; (k) whether there is a juvenile pretrial diversion program established pursuant to sections 43-260.02 to 43-260.07; (l) whether the juvenile has been convicted of or has acknowledged unauthorized use or possession of a firearm; (m) whether a juvenile court order has been issued for the juvenile pursuant to section 43-2,106.03; (n) whether the juvenile is a criminal street gang member; and (o) such other matters as the parties deem relevant to aid in the decision.

The customary rules of evidence shall not be followed at such hearing and, "[a]fter considering all the evidence and reasons presented by both parties, the case shall be transferred to juvenile court unless a sound basis exists for retaining the case in county court or district court." See § 29-1816(3)(a). "[F]actors that are considered 'neutral' or 'not applicable' are equivalent to factors that favor transfer because § 43-276 starts with the presumption that the case should be transferred." *State v. Aldana Cardenas*, 314 Neb. 544, 561, 990 N.W.2d 915, 928 (2023). The classification of certain factors as "neutral," "not applicable," or "weighing in favor of transfer" are better described as factors that do not support a sound basis for retention. See *id*.

As the Nebraska Supreme Court has explained, in conducting a hearing on a motion to transfer a pending criminal case to juvenile court, "[i]t is a balancing test by which public protection and societal security are weighed against the practical and nonproblematical rehabilitation of the juvenile." *Id*. "[I]n order to retain the proceedings, the court need not resolve every statutory factor against the juvenile, and there are no weighted factors and no prescribed method by which more or less weight is assigned to a specific factor." *Id*. "[T]he burden of proving a sound basis for retention lies with the State." *Id*. at 557, 990 N.W.2d at 926.

*Statutory Factors.*

Savior acknowledges that a trial court need not refer to all the statutory considerations of § 43-276, but notes it is preferable. Accord *State v. Tyler P.*, 299 Neb. 959, 911 N.W.2d 260 (2018). Nonetheless, she argues that when the court simply states that it "'carefully considered the matter in light of the relevant provision of [] § 43-276,' there is a failure to appropriately consider the applicable factors." Brief for appellant at 5. We disagree with Savior's characterization of the district court's order.

The district court identified the factors contained in § 43-276, and although it did not include in its order an analysis of each individual factor, it specifically identified information that weighed either in favor of, or against, retention. For example, it stated that Savior was 16 years old at the time of the offense and had only one prior nonviolent offense. Conversely, it stated that evidence supported an inference that Savior had gang affiliation, acknowledged the violent nature of the crime and Savior's apparent appreciation of the nature and seriousness of her conduct, identified the motivation for the shooting, recognized Savior's prior possession of a firearm, and concluded that in balancing the concerns for public safety against the rehabilitation of Savior, the matter should remain in district court.

Our review of the district court's order refutes Savior's argument that the district court failed to consider the applicable factors. This assigned error fails.

*Sufficiency of Evidence.*

Savior argues that the evidence does not support a finding that she was the individual who shot at Gurung's house, that she initiated the conversation with Moo regarding killing Gurung, that she participated in purchasing the firearm, or that she stole the vehicle used in the drive-by shooting. Consequently, she argues that her absence in these behaviors supports a transfer of her case to juvenile court. We disagree.

As set forth above, a court is to consider the § 43-246 factors in determining whether a juvenile's case should be retained in district court or transferred to the juvenile court. Based on the

factors above as identified by the district court (gang affiliation, violent nature of the crime, appreciation of the nature and seriousness of the conduct, motivation, prior possession of a firearm, and public safety) we find no abuse of discretion in the district court's order.

We recognize that the State did not adduce any evidence of the type of treatment to which Savior would most likely be amenable and therefore the district court was unable to assess this factor. While it is a better practice to present such evidence, because none of the factors are weighted and there is no arithmetical computation or formula for the court to consider, we find this omission not fatal in light of the remaining factors which provide a sound basis for retaining jurisdiction in the district court.

## CONCLUSION

We find no abuse of discretion in the district court's order finding a sound basis for retaining jurisdiction of Savior's case in the district court.

AFFIRMED.